Hello. Hi. Okay, Judge Willard, we're ready. All right. Good morning to both of you. We're going to hear argument now in case number 20-60448, Jai v. Garland. Ms. Thomas, take it away whenever you're ready. Okay, good morning to your honors, and I want to thank the panel for granting our joint request to appear via video this morning. May it please the court, Jehan Thomas appearing for petitioners today. I'd like to reserve four minutes rebuttal time. I ask this court to remand this case to the agency for two reasons. First, the board decision denying reopening by refusing to address petitioner eligibility for cancellation of removal is premised on a clear error of the law in light of the Supreme Court decision in Ms. Chavez v. Garland. I believe the board relied on matter of Mendoza-Hernandez and Coppola-Cortez, which has been invalidated by the Supreme Court decision, which held that the stop time rule for purpose of cancellation requires that the agent or the government serves one single document that provides all the requisite notice enumerated under the 8 U.S.C. 1229. I understand that this is the board's correspondent power, but I also understand that this court reviews legal conclusions de novo. Since the board's decision is premised on an entirely clear error of the law, it is appropriate for this court to remand back to the agency to determine this issue on the issue's point of power. The second reason I ask this court to remand this case to the board is the petitioner evidence presented with the motion to reopen demonstrated change country condition in Indonesia that was material and could not have been presented at the former hearing. And I'd like to start by quoting a sister circuit court reveal in Sihon Tongfi's session. Motions to reopen are a steep uphill climb, but that mountaintop is not entirely out of reach. And in our case, your honor, I say that that mountaintop is not out of reach because I've shown evidence that Christians are being slashed by swords as they're praying in churches. I've shown Christians that been thrown with Molotov bomb and they are killed. I've shown bombing of churches with parents and children that killed children, including Dewi's friend. Her children died and we've shown their picture at ROP 374. I've shown angry, organized mobs of Muslim roaming the streets of the capital trying to threaten the lives of Christians. I've shown hundreds of thousands of people voicing death threats against the Chinese in Indonesia. I've shown that people were paid to create bombs to burn Chinese shops and provoke masses again to attack Chinese and create another massive riot. I've shown that four out of one out of four students are willing to wage jihad in Indonesia to establish an Islamic caliphate. I've shown that people from Indonesia has flocked to Syria to fly abroad with ISIS. I've shown that Indonesian authorities now can see that the hundreds of their people have flocked into receive training from ISIS and committed the bombing of the largest city in Surabaya. I've showed the implementation of Sharia law against Christian where Christian are either flogged or canned and accept punishment. I've showed that anti-blasphemy laws that have been used and exploited against Christian that are now being in prison for a pastor who has you know shared his face with a taxi driver. He was in prison for four years. I have a lady who have just complained about a mosque, a speaker, she was in prison for a year and a half. I have somebody who just complained about little minor stuff including a small comment about Islam on Facebook. He has to face four years in prison. I've also shown that the Indonesian constitutional court holding the central government could no longer repeal local Sharia ordinance that is adopted across in Indonesia. So the actual province only implement Sharia law but implementation of Sharia inspired bylaws are all over across Indonesia. I've also showed that the but it shows a rising of religious tension in Indonesia. I've shown also that Joko, the current president, could not abolish the abuse of Sharia law. I've shown minority in Indonesia are under threats of growing Muslim threats. We are not now showing an area where Muslims are trying to gain power like in the old year 2000 where the Maluku violence was in 1999. And I also like to address the court to the report of the year 2000. The Maluku violence in 1999 completely subsided because the report says at the end of January 2000 the situation became calmer and as of June 32,000 reports of violence were rare. Also during the year 2000, the government regularly addressed in the need of inter-religious harmony. The previous president was had a long-standing advocacy for religious tolerance and the government at that time in the year 2000 opposed strongly any Muslim group advocating implementation of Sharia law. This is not what we have today and the relevant period of time the year 2000 which the order of removal was entered until the year 2019 was reviewed by other sister courts who have all came into the same conclusion. There is change country conditions in Indonesia. I respect your request from this court to employ the same reasoning of these other sisters. In the session the court has reviewed exactly year 2006 to 2018 and this court is reviewing the period of time between 2000 to 2019. The first circuit found that the conditions have steadily deteriorated over the past 12 years. In the third circuit in Limby Attorney General, the third circuit reviewed the years 2000 to 2004 through 2018. Again the third circuit concluded that the conviction was a symbolic of rising religious intolerance in Indonesia. Again the second circuit in Tennosota reviewed 2000 the anti-blasphemy laws against Christians and the first imposition of Sharia on Muslims are key evidence supporting change country conditions. Again the ninth circuit in Salim v Lynch reviewed the period from 2003 to 2016 and held there's change country conditions in Indonesia. The 11th circuit again in Krishnawati versus the United States again reviewed the period between 2014 to 2018 and all came to the same conclusion. There is change country conditions in Indonesia. Well let me let me ask you one question please. Uh now the change you had to show a change of country conditions in order to get around the procedural bar. Is that the issue here? That is correct your honor. In order for me to go around the bar I have to show change country conditions in Indonesia. I agree to that but the the evidence we've submitted 33 articles demonstrating change country condition. It is not the same will be exactly the board dismissed it said that's intermittent violence but the characterization of the evidence of intermittent violence was characterized by the board with the first circuit saying that is a persistent negative country condition. The Sihon Tongvi session dismissed that characterization of persistent country condition said no the board you are in error. There is change country condition. My characterization of the intermittent violence which they made in this court has they label it into different things. They said in the third circuit that is a situation where it is uh sorry about that. It is one of many of the periodic error. The third circuit rejected that characterization of change country condition as many of the periodic error. With the ninth circuit they said this is quantitative evidence and the and the ninth circuit in Salim Vilain says no this is not quantity. This is qualitative evidence. We've presented to this court qualitative evidence of change country condition. What I see in the year 2000 was government opposed strongly any Muslim group advocating implementation of Sharia law. I saw there were fewer reports of anti-Chinese violence. I've shown that the situation became calmer. I've shown there were few cases of attacks on churches ranging from minor damage to total destruction. I don't see a Christian that are being flogged and caned. I did not see people have been imprisoned for minor offenses for Christian. I haven't seen angry mobs of 100,000 marching the street either voicing the death threats against the Chinese or threatening the lives of Christians. I have not seen bombing that killing parents and children. I mean the change is completely wrong and if there is no change of course there would be no bar as this court and we briefed and also as we briefed the issues me and the government at least we agreed on on this issue that the congress clarification of a change country condition to the exception of the 90 days time bar reflects an intent to allow qualifying persecution claims in any time therefore comports with the regulation to waive any numerical bar. Also the BIA presidential decision by three board member in matter of JJ has also interpreted the statute and found the intent of the congress was to both waive time and numerical bar and this court in Duka v. Holder said that it would give chevron deference to a presidential decision by the board. So in light of all this I asked this court to grant the petition based on the fact that we presented change country conditions in Indonesia and two clear error of law by the board as reflected by the supreme court and Ms. V. Chavez. I'm available to answer any questions. Counsel thank you for your time. Do you have a question? I'm sorry. Yes thank you sir. Your honor could you please repeat? No no it's no problem at all. I appreciate your presentation this morning. Thank you your honors. I just have I'm a little hung up on the on the. Your honor may I I can't see your face. I don't know I'm scared to press something. I don't know if I say it got it okay. Yes now I can see your honor. I apologize I had the screen. No problem at all. So I want to talk a little bit about the number bar and I want to figure out I want to try to understand your your position on it. The way it looks to me is that congress imposes a number bar that says you get one motion to reopen. They provide one exception to the statutory number bar in subparagraph c roman at four which I take it you don't think you satisfy and then congress also provides a changed country conditions exception to the time bar but normally when we're interpreting statutes when we see congress put an exception in one piece of the statute it's an implied prohibition on that exception in the part of the statute where they don't mention it. So if they have a number bar with no changed country conditions exception and then they have a time bar with a changed country circumstances exception we usually interpret this statute to say there is no changed country conditions exception to the number bar that is the first provision where it's missing. So can you help me understand how to read the statute differently? I take your point that other people have done it other courts have done it I should say. I just don't understand how that comports with the normal rules of statutory interpretation. Well your honor my understanding of that the sign that the statute was signed about the number bar with the change country conditions but the agency are also uh you know or the attorney general and and and the agency can interpret the statute so both the attorney general and the agency in interpreting the statute made a reasonable determination or a permissible construction of the statute by stating that if there is no time bar for any person to come forward and apply for asylum based on change country condition then it would be also comport to not put a number bar on that on that uh request and I would say that that interpretation is reasonable because it harmonizes another statute which is 1158 2d which allows an asylum claim which is denied can come back forward and apply a second time if you can show change country condition so the statute in another scenario allows a person to come back for a second time to apply for asylum based on change country condition so I ask that this court uh defer to the agency in interpretation of that silent statute in both the attorney general regulation under section 1003.2 and 1003.23 and also the bia decision with respect to the VAWA exception I think that was crafted only for better spouses or better spouses parents and children so can I just ask you one one final question on yes please so and I appreciate you bringing it up so I heard you reference section 1003.2 c3 so as I'm looking at that regulation in front of me it says that the time and numerical limitations set forth in paragraph c2 that is of the regulations so it's it's an exception to the regulations number bar but it doesn't say anything about creating an exception to the statutes number bar you see what I mean so it doesn't even purport to be interpreting the statute it's just interpreting the own the regulatory time bar as a separate legal concept well your honor what I what I see here is I understand that the statute was silent but then the attorney general in promulgating that entire regulation found that there is both way that they would waive both time and number bar as well and also when the BIA was confronted again with the request to interpret the statute on the silence of whether there is a numerical bar on on that it comported with regulations again and said no we don't believe that the intent of the congress and I quote from matter of JJ there is no indication in legislative history of the INA section 240 c7 enacting the illegal immigration reform and immigrant responsibility act congress did not intend to also have the numerical limitation as the regulation had previously done and honest to god it would be illogical and contrary to the intent to prohibit the same change country condition persecution claim due to limitation on the number of permissible motion asserting such change country conditions your honor I'm just going to give you an exception like for example Egypt this is where there's change country condition when Mubarak collapsed okay but then Muslim emboldened came in and many Christians came forward but guess what when Sisi came back 2016 to 2000 we have bombing like none like crazy one after the other that was another change country conditions in Egypt so we could not bar you know a Christian from coming forward here when Muslim became emboldened following the Mubarak regime or a Christian coming forward when ISIS came into Egypt and started bombing non-stop so to limit or put a bar on a more on on the number of motion would actually preclude persecuted people that would come forward and seek protection from this country and I know my clients are not your regular Christian they are active they publicly display their faith their senior pastor called them they are pillar in his church they created and developed a mega Christian event in walnut and 45 000 appear on this event every year they create a bible study every week at their home they teach Christian people have transformed there we said without our face our life would stop so I want you to save I'm asking you to save two Christian lives here please and I ask you to review the evidence and and look at in a fair in a firm in a fair way I understand that the board um does not have to write exegesis on every uh contention but at least in this case I believe the board reacted to the evidence and did not provide an analysis why all these evidence before it does not constitute change country condition while other sister courts have found the same and also the board itself under the Trump administration order have opened many Chinese Christian Indonesian cases before so why deny my client's case that's what I don't understand they've opened multiple multiple of cases and you can see that Thomas I'm gonna um have you stop at this point thank you very much for your argument we have it honors we're going to turn to Ms. Corey now representing the attorney general hi um may it please the court Jennifer Corey on behalf of the attorney general um first off I just want to address Denise Chavez issue and say that we agree with petitioners that that issue should be remanded back to the board um due to the intervening case law um that came out of the supreme court in these Chavez um so the cancellation of removal claim should be heard by the board um based on that new law um but we contend that the court can go forward on the change country conditions um issue in the case in the asylum claim that was uh the petitioner sought reopening on um I want to first say and I'll get back to this later that that none of the courts have actually found that there there's change country conditions have been proven and it's that they have remanded back to the board um to do a proper analysis of the evidence and in those cases the board did a cursory review or what the court said um characterizes a cursory review and here the board has engaged with the evidence and done the proper analysis so it's readily distinguishable from all of those published cases cases that petitioners refer to um reopening carries a really heavy burden with it um and there is a strong public interest in finality um and in this case petitioners entered the country in 1998 and 1999 they were ordered removed after not appearing at their immigration court hearing in 2000 and they did not assert an asylum claim at all until 2018 um so that again that that's a heavy burden to reopen at this time 20 years after about 20 years after their entry um and 19 years after they've been ordered removed um for change country conditions it's not just showing that there's an increase in violence or that there's been some change in in the activity in a country that affects the petitioners it's showing there's that there's been such a change they now have a prima facie showing of eligibility for asylum that they now prima facie can show a well-founded fear of persecution and that is to show that they will be um that there is a reasonable possibility that they will be targeted for persecution in indonesia um the the board in this case reasonably found that petitioners did not meet their heavy burden um and that that uh decision is reviewed for an abuse of this court is familiar with but i just want to emphasize that it can't be reversed unless it's arbitrary or capricious and lacks rationale um but before i get to how the board did properly engage with the um evidence in this case i just wanted to say that um i wanted to point out a couple things about petitioners evidence that really make it um a bit muddled and amorphous as to their claim is their their um evidence of prior conditions the conditions they claim were present in 2000 were three pieces of evidence one being the international religious freedom report from 2000 the second being a 2010 article in the prosecution of persons who committed church bombings and the third being 2017 remarks by mike pence on indonesia calling it an inspiration to the world that was evidence of 2000 i don't understand what the 2010 and 2017 um articles have to do with what was occurring in 2000 then their their evidence that they submitted for 2018 when they submitted their motion to reopen were 33 articles it is voluminous um but those it's just unclear if they're submitting 2017 documents for the previous for the prior country conditions and 2016 documents for the current country conditions what exactly the time period is here and how you can show change between country conditions um evidence seems to overlap with each other um and again and the other thing i want to point out is that if the big turning point was the charging a hook and the conviction the charge came in 2016 and the demonstrations occurred in 2016 to 2017 when um the conviction the blasphemy conviction occurred it's unclear why petitioners did not file their their motion to reopen at that point um but the board did take judicial notice of the 2017 international religious freedom report um it summarized the findings of the 2000 international religious freedom report um it talked about what happened to a hook um it did acknowledge that conservative muslims groups have gained power and influence in indonesia there is change to that extent but again the board um straightforwardly said that petitioners did not show prima facie evidence of asylum eligibility here that is to show that these change country conditions or these it didn't meet the asylum threshold of change country conditions because these changes don't amount to the change that would show eligibility for asylum um so as they have not shown a prima facie case that they would be singled out for that uh the the board's uh analysis was rational and did not was not an abusive discretion um we also agree with petitioners um to the extent that we agree that the number bar um that there's an exception to the number bar on motions to reopen and that the regulations um the regulations comport with the intent of congress although the statute is silent um the statute was meant to allow persecution claims arising at any time and that would it would seem to thwart that um intent to not allow a second motion to reopen should country conditions change um um as such that a persecution claim does arise counsel it has some other court considered i know you there's a couple of cases i see where in dicta courts have sort of said oh you know there's this exception to the number bar um and then cites the regulation has any court ever grappled with the fact that the stat i mean the statute isn't silent right the statute creates an exception in subparagraph c roman at four and it also creates changed country conditions exceptions to the time bar as you just pointed out has any court ever grappled with this question of statutory interpretation as to whether congress actually authorized changed country conditions changed country conditions exceptions to the he's been at my office for 40 years um i believe um and he said he's never seen that that argument before i think courts have just accepted it because the intent seems to be pretty explicit and i think that that i mean you're exactly correct that the the statute doesn't mention this number exception but it it just has been widely accepted and as far as i know in my i appreciate your your candor on it i um it does seem odd to me too the thing that's that it seems doubly odd to me and i'm curious about the government's position on this i asked your friend on the other side is that normally when we're looking at a statute and we see congress make an exception it impliedly excludes other exceptions and it seems like in particularly glaring here given that they knew how to make a changed country circumstances exception that later not in the number bar but in the time bar and so it seems really hard to sort of square any of that and say well congress in your in your words you know the clear intent would have been to to authorize an exception to the number bar i agree and that's a complicated question i i mean i'll go down to the bottom line again i can't i i really wish i could give you some fulsome fulsome answer um but that would require a lot of research and a lot of time and if that's something the court wants obviously that is something we can do but i i think bottom line it's just that the intent is explicit and i don't know why congress did not include it explicitly in the number where they did include other exceptions um and so i very much understand the question i just do not have a clear answer i'm sorry i appreciate your candor thank you you know let me ask you this uh does the attorney general have the right to waive these procedural bars does the attorney general have the right to waive um yes i mean you mean the board can respond no i mean the attorney general waived it i don't believe that that that we could waive um the procedural bar i'm sorry if i'm not completely well you know there's some procedural rules that relate to claims handling that the attorney general can waive um okay um they haven't waived either of these in any of them no no waive the waive the bar yes no not that i know of your honor no if a bar applies it applies and and if there's an exception that that that the petitioner can meet then then that's the exception they have to meet for that bar and your position is a number bar bars the uh reopening because you argue that the the board's decision shouldn't be overturned that there's no change in country conditions yeah why should we remand it then what's the purpose of the asylum and well the on remand the board can find the the um case still number barred um and still time barred but it can also exercise its sua sponte reopening power is that the only way is that the only way it could do that that sua sponte can it do it anyway i mean if we affirm across the if we're we affirm the order don't they have the right to come in with a petition for sua sponte reopening yes they can then file a motion to reopen again with the board and the board can sua sponte reopen at that point yes your honor why should we remand if we accept your argument um well because the board has not spoken to the cancellation of removal claim yet in this case given with the new supreme court precedent they applied law that the now now the supreme court has overruled and while the board may not exercise its sua sponte they could not they they may choose not to exercise their sua sponte power to reopen um i just remand seems appropriate here where we would want the board to speak first um regarding the petitioner's cancellation of removal claim in light of the new precedent but there's a the board had an alternative holding didn't it that the claim was procedurally barred um only the yes the claim is procedurally barred but they chose they and that's the finding they had procedurally barred but they chose not to exercise their sua sponte reopening power based on law that the supreme court has now has has now rejected so it would make sense to have the board reconsider that part we don't have any jurisdiction to ask them to to um to open the grant of motion to reopen sua sponte no i i agree with that i don't think that it's asking the it's not asking the board to affirmatively sua sponte reopen it's just for reconsideration of intervening precedent okay if the court doesn't have any more questions i'll conclude on them okay miss cori thank you very much we appreciate it uh miss thomas we're back to you for any rebuttal you might have okay first of all i want to thank my opposing counsel she has been wonderful throughout the whole process with respect to the remand issue on the sua sponte uh sua sponte authority of the board for judge davis please he's asking why do we remain the board your honor refused to address at all the issue of the eligibility of cancellation relying on a clear error of the law that was invalidated by the supreme court if this court demands it back to the board to allow it to even initiate its decision in light of a intervening law that would be great for the respondent because they have shown that they have one daughter with a very severe heart condition that i'm sure that the board of the exercise is responding given given the intervening law and the medical condition of the daughter and the good moral character of these petitioners before this court and before the board i think the board would send it back to the court with respect to the government position that they've never acted to bring an asylum case except years later no they were they tried every time they tried one two three four time and each time their attorneys failed them first attorney was disbarred because he never communicated with his clients the second attorney was ineffective he failed to follow losada claim against the former council and and file an application and then they were um abused by another law student so they tried the government said why did they waited uh until to file the motion to open if they're claiming that the change country was in 2016 well then we brought that motion to reopen after the bombing in her own city happened in may 2018 her friend children died and she would definitely be scared to go back to indonesia and be bombed and have her children die as well this what instilled a fear in dewey's heart to come forward and request a motion to reopen the government is saying they didn't show a prima eligibility for asylum i asked this court to employ a reason of a sister court multi-b ashcroft the ninth circuit said the critical question is when a person did not have a claim now have a well-founded fear of persecution of course someone who has three bombing of three churches in her city her friend her two children die the picture of them at rop 374 of course she would have a well-founded fear and a prima facie eligibility the board placed a stringent a stringent standard on my clients by saying they have to show either a pattern of practice or that they will be singled singled out for persecution all they have to show is under that view that devotion beholder another circuit court has said in a motion to reopen the board would err to require a conclusive showing or relief all they have to show is if based on the fact and upon reopening in a developed hearing new facts would show a well-founded fear so i understand this court have many issues to deal with country condition which i believe was voluminous i don't believe that the congress uh intended uh not or intended not to allow multiple motions if a person can come as forward as many times to seek a country condition because in one country you can have many change country conditions so to preclude or put a number bar on a motion it would definitely definitely be illogical to preclude people persecuted to come forward and seek protection and thank you today your honors and i don't have anything else okay miss thomas thank you so much thank you both for appearing with us today the case will be taken under advisement and i think wraps up our argued cases for the week so the court will adjourn under the regular order thank you both thank you so much bye-bye stay safe